**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION**

| | |
|---|---|
| **ANTHONY DESPARROIS, individually and on behalf of all others similarly situated,** | |
| ***Plaintiff,*** | **Case No.: 3:25-cv-551-NJR** |
| **v.** | **JURY TRIAL DEMANDED** |
| **CHERVON NORTH AMERICA, INC., and LOWE'S HOME CENTERS, LLC,** | |
| ***Defendants.*** | |

## AMENDED CLASS ACTION COMPLAINT

Plaintiff Anthony Desparrois ("Plaintiff") brings this Amended Class Action Complaint against Defendant Chervon North America, Inc. ("Chervon"), and Defendant Lowe's Home Centers, LLC ("Lowe's"), (collectively "Defendants") as an individual and on behalf of all others similarly situated. Plaintiff alleges, upon personal knowledge as to Plaintiff's own actions and to counsel's own investigations, and upon information and belief as to all other matters, as follows:

## INTRODUCTION

1.      Plaintiff brings this action because of Defendants' collective design, manufacture, advertising, marketing, and sale of dangerous products. On December 19, 2024, Defendant Chervon recalled "About 63,000" of its "SKIL 40V 5.0 Ah Lithium-Ion Batteries" ("Products") due to the Products ability to "overheat, posing fire and burn hazards" ("Fire Risk").[1]

---

[1] https://www.cpsc.gov/Recalls/2025/Chervon-North-America-Recalls-SKIL-40V-50Ah-Lithium-Ion-Batteries-for-SKIL-Lawnmowers-and-Outdoor-Tools-Due-to-Fire-and-Burn-Hazard

2.      The Products were sold at Lowe's, and other hardware and home improvement stores nationwide, and online at Amazon.com, Walmart.com, and Lowes.com from October 2019 through December of 2024 for $170 individually and about $400 when sold in combination with lawnmowers.[2]

3.      For over five years, Defendants sold these dangerous Products nationwide, which are prone to catch fire.[3]

4.      Given that around 63,000 Products were sold, the total revenue of sales for the Products calculates to around $10,700,000.00.[4] Upon information and belief, Defendants have not disgorged any of this revenue at this time.

5.      Defendant Chervon has offered a remedy ("Remedy"), but the Remedy is limited and not sufficient.[5] Defendant Chervon requires consumers to first register for the recall online.[6] After registry, Plaintiff and other similarly situated consumers must keep and maintain the dangerous Products, likely in areas subject to the Fire Risk of the Products. Then, Plaintiff and other consumers must pack up the dangerous, fire-prone Products into a "battery collection kit", and, upon information and belief, then ship these Products through the mail to Defendant.[7] If the dangerous Products make their way back to Defendant, despite the potential for the Products to catch fire, then Defendant then states it will provide a refund or exchange.[8]

---

[2] https://www.cpsc.gov/Recalls/2025/Chervon-North-America-Recalls-SKIL-40V-50Ah-Lithium-Ion-Batteries-for-SKIL-Lawnmowers-and-Outdoor-Tools-Due-to-Fire-and-Burn-Hazard
[3] *Id.*
[4] *Id.* ; https://www.calculator.net/
[5] https://www.cpsc.gov/Recalls/2025/Chervon-North-America-Recalls-SKIL-40V-50Ah-Lithium-Ion-Batteries-for-SKIL-Lawnmowers-and-Outdoor-Tools-Due-to-Fire-and-Burn-Hazard
[6] *Id.*
[7] *Id.*
[8] *Id.*

6.    Notably, Defendant offers no further insurance or guarantees that its new batteries, those sent to replace the Products, are any different or any safer than the Products which are a fire risk.[9]

7.    To the extent that Defendant has offered that the replacements for the Products are safe, such should be taken with great caution by consumers, such as Plaintiff, as Defendant has already sold Products that are marketed and sold as safe and free from fire risk yet ignite, overheat, and burn on their own.[10] Had Plaintiff known of the Fire Risk, then Plaintiff would not have purchased one of the Products or would have paid significantly less for the said Products.

8.    Additionally, Defendant offers no compensation for remedies related to the destruction or damages to property or persons caused by the Products, just a refund or replacement.[11] Defendant's method of remedy also requires the consumers, such as Plaintiff, to keep and maintain the dangerous Products while waiting to receive the "battery collection kit" offered by Defendant– thus increasing the risk of property destruction or injury to persons. Defendant has not offered any compensation for the required storage of the dangerous Products or risk therein of such storage that is required to be undertaken by the Remedy.[12] This foreseeable event and expense renders Defendant's Remedy inadequate.

9.    Defendant has not offered any compensation for the amount of time Plaintiff, and similar consumers, must spend in packing up the dangerous Products.[13] This foreseeable event and expense renders Defendant's Remedy inadequate.

---

[9] https://www.cpsc.gov/Recalls/2025/Chervon-North-America-Recalls-SKIL-40V-50Ah-Lithium-Ion-Batteries-for-SKIL-Lawnmowers-and-Outdoor-Tools-Due-to-Fire-and-Burn-Hazard
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*

10.    Defendant has not offered any compensation to Plaintiff and other consumers in the event that the dangerous Products do not make it to Defendant as such "return" of the Products are necessary for the recall remedy. It is foreseeable that the Products, that are fire prone, would ignite and destroy themselves prior to any required "return" to Defendant's custody, thus eliminating any refund or replacement.[14] This foreseeable event renders Defendant's Remedy inadequate.

11.    In sum, Defendant's Remedy is inadequate for Plaintiff and similar consumers. Defendant has sold dangerous batteries, asks consumers such as Plaintiff to keep these fire-prone Products, and then asks Plaintiff to send these fire-starters in the mail to Defendant – all in hopes of receiving a refund or potentially receiving a potentially dangerous additional battery. Defendant, upon review of its Recall and Remedy as published, has not offered any remedy for those consumers, such as Plaintiff, whose batteries have been burnt and incapable of being return either.[15]

## **PARTIES**

12.    Plaintiff is a resident and citizen of Illinois, residing in Cook County. Plaintiff is a private individual who purchased one or more of the recalled Products. Plaintiff's Product overheated unexpectedly and melted, causing minor injuries to Plaintiff's hand and destruction to the Product itself, rendering the Product non-functional.

13.    Defendant Chervon is a multinational corporation that prides itself on its self-proclaimed ability to "build better tools to help build a better world".[16] Defendant Chervon has its principal place of business located at 1203 East Warrenville Road, Napierville, Illinois, 60563.

---

[14] https://www.cpsc.gov/Recalls/2025/Chervon-North-America-Recalls-SKIL-40V-50Ah-Lithium-Ion-Batteries-for-SKIL-Lawnmowers-and-Outdoor-Tools-Due-to-Fire-and-Burn-Hazard
[15] *Id.*
[16] https://www.linkedin.com/company/chervon-group/#:~:text=CHERVON%20is%20a%20leading%20global,help%20build%20a%20better%20world.

14.     Defendant Lowe's is a multinational corporation that sells items, such as tools, to consumers such as Plaintiff. Defendant Lowe's has its principal place of businesses located at 1000 Lowe's Boulevard, Mooresville, NC 28117.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) as this matter is a class action matter in which the matter in controversy exceeds the sum or value of $5,000,000.00, exclusive of interests and costs and is a class action in which any member of the class of plaintiffs is a citizen of a State different from any Defendant and there are more than 100 members of the class and at least one member of the class is of different citizenship from each Defendant.

16.     This Court has personal jurisdiction over Defendant Chervon as it has sufficient minimum contacts with this District and Court. Additionally, Defendant Chervon has appeared in this matter by and through its counsel and has thus consented to this Court's exercise of personal jurisdiction.

17.     This Court has personal jurisdiction over Defendant Lowe's as it has sufficient minimum contacts with this District. Additionally, Defendant Lowe's has appeared in this matter by and through its counsel and has thus consented to this Court's exercise of personal jurisdiction.

18.     Venue is proper in this Court pursuant to 28 U.S.C. 1391(b) as Defendants reside in this District in that the Defendants have brick and mortar stores throughout this District and place items, such as the Products, within the stream of commerce in this District.

## FACTUAL ALLEGATIONS

19.    The Products at hand are lithium-ion batteries used for charging and powering an array of tools.[17]

20.    Specifically, the Products are: "SKIL brand 40V 5.0Ah Lithium-Ion Batteries that were manufactured before May 1, 2021. "SKIL" and "PWRCORE 40" are printed on the batteries. The recalled batteries were sold individually under the model number BY8708-00 for use with all SKIL 40V tools and were also sold in a combination kit with SKIL 40V Brushless 20-in Push Mowers (Model #PM 4910-10) or SKIL 40V Brushless 20-in Self-Propelled Mowers (Model #SM4910-10)."[18]



---

[17] https://www.cpsc.gov/Recalls/2025/Chervon-North-America-Recalls-SKIL-40V-50Ah-Lithium-Ion-Batteries-for-SKIL-Lawnmowers-and-Outdoor-Tools-Due-to-Fire-and-Burn-Hazard
[18] *Id.*

21.     The Products are made in China and imported by Chervon North America, Inc.[19]

22.     These Products were recalled due to safety concerns, with over 63,000 Products being recalled. The Consumer Product Safety Commission received 100 reports of overheating, fires, and smoking due to the Products. Burns and smoke inhalation were reported. There were also 49 reports of property damages. The Products pose a danger to persons and property.[20]

23.     On December 19, 2024, the Products were recalled due the fire and burn hazards inherent to the Products.[21]

24.     The Products do not adhere to the representations made by Defendants, and in any event, the true dangerous nature of the Products was omitted by Defendants through the marketing and sale of the Products. Had Plaintiff known of the dangerous nature of the Products, Plaintiff would not have purchased the Products or would have paid significantly less for them.

25.     Plaintiff purchased one of the Products from Defendant. Plaintiff's Product melted itself due to the Fire Risk. Plaintiff has been deprived of his benefit of the bargain.

26.     Defendant Chervon offered a Remedy and stated that those affected by the recall of the dangerous Products, offering a refund, or replacement of the Products with another analogous, and potentially fire-prone product. The Remedy requires consumers to register the Products. The Remedy then requires the consumers to return the Products. The Remedy then states that Chervon will provide a refund and or exchange "upon return" of the battery.[22]

---

[19] https://www.cpsc.gov/Recalls/2025/Chervon-North-America-Recalls-SKIL-40V-50Ah-Lithium-Ion-Batteries-for-SKIL-Lawnmowers-and-Outdoor-Tools-Due-to-Fire-and-Burn-Hazard
[20] *Id.*
[21] *Id.*
[22] *Id.*

27.    This Remedy provided by Defendant is inadequate. The remedy does not provide any assistance with the costs of property repair, damages, or other injuries related to the Products and the risks of said Products catching fire and causing damage.

28.    As previously stated, Defendant Chervon has offered a Remedy that requires persons, such as Plaintiff, to keep and store their dangerous Products and then ship those dangerous Products back to Defendant in exchange for a refund or replacement upon return of the Products to Defendant. This remedy is inadequate.

29.    Defendant's Remedy is further dangerous in that the remedy requires consumers to keep and store the dangerous Products, thus posing a further fire and burn risk. The Remedy does not account for the risk and expenses required in safely storing the dangerous Products. The Remedy does not account for the time, expenses, and danger that is inquired by consumers in handling and returning the Products. The Remedy does not provide a remedy for those consumers whose purchased Products have destroyed themselves and are incapable of being returned as said Products no longer exist due to incinerating themselves.[23]

30.    The Remedy is inadequate in that it requires the return of the Products and the consequences therein.[24] The Products are prone to destroying themselves.[25] Thus, any Products that destroy themselves, or have been destroyed, are ineligible for refund or replacement as they cannot be shipped and returned to Defendant. This lack of refund or replacement for Products that suffer from the known self-immolation hazard renders Defendant Chervon's Remedy inadequate.

31.    The exact issue for which the Products were recalled, the Fire Risk, precludes the safe refund or exchange of the Product thus rendering the Remedy inadequate. Consumers, such

---

[23] https://www.cpsc.gov/Recalls/2025/Chervon-North-America-Recalls-SKIL-40V-50Ah-Lithium-Ion-Batteries-for-SKIL-Lawnmowers-and-Outdoor-Tools-Due-to-Fire-and-Burn-Hazard
[24] Id.
[25] Id.

as Plaintiff, through the remedy offered, are forced to keep and maintain a fire-prone battery and then ship that very same fire-prone dangerous Product into the mail.[26] As previously discussed, consumers, such as Plaintiff are then required to wait for a refund or replacement and such will not be given unless the dangerous Products make it back to Defendant, which is not guaranteed as the Products may catch fire. For consumers who have experienced a full fire and meltdown of their Products, remedies do not seem to be available whatsoever as such a burnt Product would not be able to be shipped. Given all of the above, the Remedy is inadequate.

## CLASS ACTION ALLEGATIONS

32.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23 on his own behalf and on behalf of the following Classes:

**Nationwide Class:** All persons within the United States who purchased the Products within the applicable statute of limitations.

**Illinois Subclass:** All persons within Illinois who purchased the Products within the applicable statute of limitations.

33.     The above classes shall be collectively referred to herein as the "Classes" or "Class".

34.     Plaintiff reserves the right to amend the Class definition if further investigation and discovery indicate that such Class definitions require narrowing, expansion, or other modification.

35.     Defendants and their officers, agents, counsel, and employees are excluded from the Classes.

---

[26] https://www.cpsc.gov/Recalls/2025/Chervon-North-America-Recalls-SKIL-40V-50Ah-Lithium-Ion-Batteries-for-SKIL-Lawnmowers-and-Outdoor-Tools-Due-to-Fire-and-Burn-Hazard

36.     This action has been brought and may be maintained as a class action under Federal Rule of Civil Procedure 23.

37.     Federal Rule of Civil Procedure Rule 23(a)(1). **Numerosity**: The Classes number at least in the thousands of persons, as roughly 63,000 of the Products were recalled. As a result, joinder of all Class Members in a single action is impracticable. Class Members may be informed of the pendency of this action through a variety of means, including but not limited to, direct mail, email, published notice, and website posting.

38.     Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3). **Existence and Predominance of Common Questions of Law and Fact**: There are questions of law and fact common to the Classes that predominate over any question affecting only individual members. These questions, each of which may be also certified under Rule 23(c)(4), include, but are not limited to:

    a)  Whether Chervon's and/or Lowe's advertising, merchandising, marketing, labeling, and promotion materials directed towards Plaintiff and the Classes were deceptive in that said advertising, merchandising, marketing, labeling, and promotional materials did not disclose the risk posed in the Products or presented the Products as safe, despite the Products risk of fire;

    b)  Whether Chervon and/or Lowe's made representations regarding the safety, or safe nature of the Products;

    c)  Whether Chervon and/or Lowe's omitted material information regarding the safety of the Products;

    d)  Whether the Products were merchantable;

    e)  Whether the Products violated any consumer protection statutes invoked herein;

f)   Whether Chervon's and/or Lowe's conduct alleged herein was fraudulent;

g)   Whether Chervon and/or Lowe's was unjustly enriched by the sales of the Products;

h)   Whether Chervon and/or Lowe's breached any contracts or warranties with Plaintiff and the Classes;

39.   The above questions predominate over any questions affecting only individual persons concerning the sales of Chervon's Products throughout the United States and a class action is superior with respect to the considerations of consistency, economy, efficiency, fairness, and other available methods for the fair and efficient adjudication of claims asserted herein.

40.   Federal Rule of Civil Procedure 23(a)(3). **Typicality**: Plaintiff's claims are typical of those of the Classes in that the Class Members uniformly purchased the Products and were subject to Defendants' uniform marketing, merchandising, labeling, advertising, and promotion of the Products at the time of purchase.

41.   Federal Rule of Civil Procedure 23(b)(3). **Superiority**: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

i.   The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

ii.   The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

iii. When Defendants' liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

iv. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

v. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude their maintenance as a class action;

vi. This class action will assure uniformity of decisions among Class Members;

vii. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

viii. Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by a single class action; and

ix. It would be desirable to concentrate in this single venue the litigation of all Class Members who were induced by Defendants' uniform false or deceptive advertising regarding the Products.

42. Federal Rule of Civil Procedure(b)(1). Absent a representative class action, members of the Classes would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their

interests, while establishing incompatible standards of conduct for Chervon. The proposed Classes thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

43.    Additionally, the Classes may be certified under Rule 23(b)(1) and/or (b)(2)because: a. The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members of the Classes that would establish incompatible standards of conduct for Chervon; b. The prosecution of separate actions by individual members of the Classes would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other members of the Classes not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or c. Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final and injunctive relief with respect to the members of the Classes as a whole.

## CAUSES OF ACTION

### COUNT I
### Unjust Enrichment
### (On Behalf of the Plaintiff and all Classes)

44.    Plaintiff pleads this cause of action in the alternative of any other plead causes of action which allege the existence of any valid contract between Plaintiff and Defendants.

45.    Plaintiff and Class Members conferred benefits upon Defendants in the form of monies paid to purchase the defective, dangerous Products. These monies were not gifts or donations but were given in exchange for the Products.

46.    Defendants voluntarily accepted and retained these benefits.

47.    Because this benefit was obtained unlawfully, namely by Defendants' sale of Products that were dangerous and did not comport to warranties, representations, and advertising

regarding safety, or a lack of spontaneous combustion, it would be unjust and inequitable for Defendant to retain the benefits.

48.    Defendants received benefits in the form of millions of dollars' worth of revenue from purchases of the Products to the determinant of Plaintiff and Class Members as Plaintiff and the Class Members purchased mislabeled or incorrectly advertised Products that did not adequately or accurately disclose the Fire Risk contained within the Products.

49.    Defendants have been unjustly enriched in retaining the revenues derived from the purchases of the Products by Plaintiff and the other members of the Classes. Retention of those monies under these circumstances is unjust and inequitable because Defendant Chervon's labeling of the Products was misleading to consumers, which caused injuries to Plaintiff, and members of the Classes, because they would have not purchased the Products had they known the true facts.

50.    Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and members of the Classes is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the Nationwide Class for its unjust enrichment, as ordered by the Court.

## COUNT II
### Breach of Express Warranty
### (On Behalf of the Plaintiff and all Classes)

51.    Plaintiff incorporates the allegations set forth in Paragraphs 1-43 as though set forth fully herein.

52.    Plaintiff, and each member of the Classes, formed a contract with Defendant at the time they purchased the Products.

53.    The terms of the contract include the promises and affirmations of fact made by Defendant on the Products' packaging and through marketing and advertising.

54.     This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and are part of the standardized contract between Plaintiff and the members of the Classes and Defendant.

55.      As set forth above, Defendant purports through its advertising, labeling, marketing, and packaging, to create an express warranty that the Product is safe for its intended use.

56.     Plaintiff and the members of the Classes performed all conditions precedent to Defendant's liability under this contract when they purchased the Products.

57.     Defendant breached express warranties relating to the Products and their qualities because Defendant's Product possessed the possibility to overheat and cause injury, even when correctly used, at the time of purchase and the Products do not conform to Defendant's affirmations and promises described above.

58.     Plaintiff and each member of the Classes would not have purchased the Products had they known the true nature of the risk of the Product overheating and burning those who used the Products.

59.     As a result of Defendant's breach of warranty, Plaintiff and each Class Member suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

## <u>COUNT III</u>

### <u>Breach of Implied Warranty of Fitness for a Particular Purpose</u>
### <u>(On Behalf of the Plaintiff and all Classes)</u>

60.     Plaintiff incorporates the allegations set forth in Paragraphs 1-43 as though set forth fully herein.

61.     Defendants are merchants and were at all relevant times involved in the manufacturing, distributing, warranting, and/or selling of the Products.

62.    The Products are "goods" under the relevant laws, and Defendants knew or had reason to know of the specific use for which the Products, as goods, were purchased.

63.    Defendant Chervon entered into agreements with retailers to sell its Products to be used by Plaintiff and Class Members for personal use.

64.    The implied warranty of merchantability included with the sale of each Product means that Defendant Chervon guaranteed that the Products would be fit for the ordinary purposes for which batteries are used and sold and were not otherwise injurious or dangerous to consumers. The implied warranty of merchantability is part of the basis for the benefit of the bargain between Defendants, and Plaintiff and the Class Members.

65.    Defendants breached the implied warranty of merchantability because the Products are not fit for their ordinary purpose of providing reasonably reliable and safe operation for users because the Products have a risk of overheating and catching on fire. Therefore, the Products are not fit for their particular purpose of providing safe power to tools.

66.    Defendant Chervon's warranty expressly applies to the purchaser of the Products, creating privity between Defendant and Plaintiff and Class Members.

67.    However, privity is not required because Plaintiff and Class Members are the intended beneficiaries of Defendant Chervon's warranties and its sale through retailers. Defendant Chervon's retailers were not intended to be the ultimate consumers of the Products and have no rights under the warranty agreements. Defendant Chervon's warranties were designed for and intended to benefit the consumer only, including Plaintiff and Class Members.

68.    Defendant Chervon has been provided sufficient notice of its breaches of implied warranties associated with the Products. Defendant was put on constructive notice of its breach through its review of consumer complaints and other reports.

16

69.     Had Plaintiff, Class Members, and the consuming public known that the Products could overheat and cause injury, they would not have purchased the Products or would have paid less for them.

70.     As a direct and proximate result of the foregoing, Plaintiff and Class Members suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

## COUNT IV
## Breach of the Implied Warranty of Merchantability
### (On Behalf of the Plaintiff and all Classes)

71.     Plaintiff incorporates the allegations set forth in Paragraphs 1-43 as though set forth fully herein.

72.     Defendants are merchants engaging in the sale of goods to Plaintiff and the Classes.

73.     There was a sale of goods from Defendants to Plaintiff and the Classes.

74.     As the developer, manufacturer, marketer, distributor, and/or seller of the defective Products, Defendant Chervon impliedly warranted to Plaintiff and the Classes that its Products were fit for their intended purpose in that they would be safe for Plaintiff and the Classes to use as a power source for tools.

75.     Contrary to these representations and warranties, the Products were not fit for their ordinary use, and did not conform to Defendant Chervon's affirmations of fact and promises as use of the Products was accompanied by the risk of adverse effects that do not conform to the packaging.

76.     Defendant Chervon breached the implied warranty in the contract for the sale of the Products by selling to Plaintiff and the Classes a product that Defendant Chervon knew would

17

expose Plaintiff and the Classes to significant risks, thus meaning Defendant knew that the Products were not fit for their intended purpose.

77.     Defendant was on notice of this breach, as they were made aware of the adverse health effects caused by the overheating and potential ignition that can result from the use of their Products.

78.     Plaintiff and the Classes did not receive the goods as bargained for because the goods they received were not merchantable as they did not conform to the ordinary standards for goods of the same average grade, quality, and value.

79.     Plaintiff and members of the Classes are the intended beneficiaries of Defendant Chervon's implied warranties.

80.     The Products were not altered by Plaintiff or the members of the Classes.

81.     Plaintiff and members of the Classes used the Products in the ordinary manner in which such devices were intended to be used.

82.     The Products were defective when they left the exclusive control of Defendant Chervon.

83.     The Products were defectively designed and/or manufactured and unfit for their intended purpose, and Plaintiff and members of the Classes did not receive the goods that they bargained for.

84.     Plaintiff and members of the Classes purchased the Products that contained the Defect, which was undiscoverable by them at the time of purchase and at any time during the class period.

85.     As a result of the defect in the Products, Plaintiff and members of the Classes have suffered damages including, but not limited to, the cost of the defective product, loss of use of the product and other related damage.

86.     Defendant Chervon breached the implied warranty of merchantability to the Plaintiff and Class members.

87.     Plaintiff and Class Members have been damaged by Defendant Chervon's breach of the implied warranties.

88.     Plaintiff and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

### COUNT V: VIOLATION OF ILL. COMP. STAT. 505/1 THROUGH 505/12: CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICE ACT ("The Consumer Fraud Act") (On behalf of Plaintiff and all Classes)

89.     Plaintiff incorporates paragraphs 1-43 as if fully set forth herein

90.     Defendants advertised the Products as safe and fit for use for consumers, such as Plaintiff. This advertisement constituted deception as the Products were not safe.

91.     Defendants intended that the Plaintiff, and consumers, rely on the advertisements, which were deceptive. Defendant's scienter is irrelevant, and even innocent misrepresentations are actionable.

92.     This deceptive advertising took place in the course of conduct involving trade or commerce, namely the sale and advertising of the Products.

93.     Plaintiff, and all similarly situated consumers have suffered damages due to this deception as they have been deprived of their benefit of the bargain in purchasing the Products.

94.    But for Defendants assertions, advertising, and deception, Plaintiff and all similarly situated consumers would not have suffered any damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Classes alleged herein, respectfully request that the Court enter judgment in his favor and against Defendant as follows: A. For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the representatives for the Classes and Plaintiff's attorneys as Class Counsel;

A.  For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the representatives for the Classes and Plaintiff's attorneys as Class Counsel;

B.  For an order declaring the Defendant's conduct violates the causes of action referenced herein;

C.  For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

D.  For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E.  For prejudgment interest on all amounts awarded;

F.  For an order of restitution and all other forms of equitable monetary relief;

G.  For injunctive relief as pleaded or as the Court may deem proper; and

**H.**  For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

### DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all claims in this Complaint and of any and all issues in this action so triable as of right.

Dated: July 14, 2025,                                    Respectfully submitted,

                                                         */s/ Paul J. Doolittle*
                                                         Paul J. Doolittle (Bar No. 66490)
                                                         **POULIN | WILLEY |
                                                         ANASTOPOULO, LLC**
                                                         32 Ann Street
                                                         Charleston, SC 29403
                                                         Tel: (803) 222-2222
                                                         Email: paul.doolittle@poulinwilley.com
                                                                cmad@poulinwilley.com