## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANTHONY DESPARROIS, **individually and on behalf of all others similarly situated,** | |
| **Plaintiff,** | |
| **v.** | Case No. 3:25-CV-551-NJR |
| CHERVON NORTH AMERICA, INC., and LOWE'S HOME CENTERS, LLC, | |
| **Defendants.** | |

## <u>MEMORANDUM AND ORDER</u>

**ROSENSTENGEL, District Judge:**

Plaintiff Anthony Desparrois filed this putative class action alleging that SKIL-branded lithium-ion batteries produced by Defendant Chervon North America, Inc. ("Chervon"), and sold by home improvement retailers like Defendant Lowe's Home Centers, LLC ("Lowe's) (collectively, "Defendants"), overheat and catch fire. (Doc. 21). Desparrois asserts five causes of action under state law. (*Id.*). Defendants now move to dismiss the complaint for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, as well as for failure to state a claim under Rule 12(b)(6). (Doc. 24). Desparrois filed a response in opposition (Doc. 26), and Defendants filed a reply brief (Doc. 27). For the reasons set forth below, Defendants' motion to dismiss is granted.

### BACKGROUND

The following facts are derived from Desparrois's Amended Complaint, which the Court accepts as true for the purposes of Defendants' motion to dismiss.

On December 19, 2024, Chervon recalled approximately 63,000 SKIL 40V 5.0Ah Lithium-Ion Batteries manufactured before May 1, 2021 (the "Products") due to their ability to overheat and create fire and burn hazards. (Doc. 21 at ¶ 1). The Products, which are made in China and imported by Chervon, were sold at home improvement stores nationwide and through online retailers from October 2019 through December 2024. (*Id.* at ¶¶ 2, 21). The Products cost approximately $170 individually and $400 when sold in combination with lawnmowers. (*Id.*). The recall was initiated after the Consumer Product Safety Commission ("CPSC") received 100 reports of thermal incidents involving the Products including overheating, smoking, and fire. (*Id.* at ¶ 22). The CPSC also received eight reports of minor burns and/or smoke inhalation and 49 reports of related property damage. (*Id.* at ¶ 22). As a remedy, Chervon offered a refund or replacement of the Product with another analogous, potentially fire-prone battery. (*Id.* at ¶ 26).

At some unknown time, Desparrois purchased the Product, which overheated and melted, causing minor injuries to his hand and destruction of the Product. (*Id.* at ¶ 12). It is unknown whether Desparrois participated in the recall, but he claims the remedy offered by Chervon is inadequate. (*Id.* at ¶¶ 5, 27). First, Chervon requires consumers to register for the recall online and keep the dangerous Products until they can be packed into a "battery collection kit." (*Id.* at ¶ 5). Then, consumers must ship the Products through the mail to Chervon. (*Id.*). Assuming the Products make it back to Chervon, which is questionable considering the Products may ignite and destroy themselves, Chervon will then provide a refund or exchange. (*Id.* at ¶¶ 5, 10).

Desparrois asserts that Chervon has made no guarantee that its replacement

batteries are any different or any safer than the Products that are a fire risk. (*Id.* at ¶ 6). Moreover, Chervon offers no compensation for damage to property or persons, no compensation for the required storage of the dangerous Products, and no compensation for consumers' time spent packing up the dangerous Products. (*Id.* at ¶¶ 8, 29). It also does not provide a remedy for those consumers whose Products incinerated themselves and, thus, are incapable of being returned. (*Id.* at ¶ 29). Desparrois contends that, had he known of the dangerous nature of the Products, he would not have purchased one of the Products or would have paid significantly less for it. (*Id.* at ¶¶ 7, 24).

With his Amended Complaint, Desparrois has asserted claims on behalf of a Nationwide Class, consisting of all persons within the United States who purchased the Products within the applicable statute of limitations, as well as an Illinois Subclass, consisting of all persons within Illinois who purchased the Products within the applicable statute of limitations. (*Id.* at ¶ 32). Specifically, Desparrois asserts—on behalf of himself and all Classes—Unjust Enrichment (Count I), Breach of Express Warranty (Count II), Breach of Implied Warranty of Fitness for a Particular Purpose (Count III), Breach of the Implied Warranty of Merchantability (Count IV), and a Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") (Count V).

Defendants have moved to dismiss all of Desparrois's claims for lack of standing under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6).

## LEGAL STANDARDS

When reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must consider whether the complaint states a claim for relief

that is "plausible" on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Taha v. Int'l Bhd. of Teamsters, Loc. 781*, 947 F.3d 464, 469 (7th Cir. 2020) (quoting

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plaintiff need not plead detailed factual

allegations, but must provide more than "a formulaic recitation of the elements."

*Twombly*, 550 U.S. at 570; *see also Luna Vanegas v. Signet Builders, Inc.*, 46 F.4th 636, 645 (7th

Cir. 2022) ("all a complaint must do is state a plausible narrative of a legal grievance that,

if proved, would entitle the plaintiff to relief"). While the court accepts as true all well-

pleaded facts and draws reasonable inferences in the plaintiff's favor, it does not accept

legal conclusions. *Burke v. 401 N. Wabash Venture, LLC,* 714 F.3d 501, 504 (7th Cir. 2013).

In evaluating a challenge to subject matter jurisdiction on the basis of standing

under Rule 12(b)(1), a court must first determine whether a factual or facial challenge has

been raised. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). "A facial challenge attacks

standing on the pleadings, arguing that the plaintiff lacks standing even if the well-

pleaded allegations in the complaint are taken as true. A factual challenge, by contrast,

asserts that there is *in fact* no standing." *In re Recalled Abbott Infant Formula Prods. Liab.*

*Litig.*, 97 F.4th 525, 528 (7th Cir. 2024) (quoting *Flynn v. FCA U.S. LLC*, 39 F.4th 946, 952

(7th Cir. 2022)). An argument that a plaintiff did not adequately plead standing is a facial

challenge. *Id.* In the Seventh Circuit, "when evaluating a facial challenge to subject matter

jurisdiction under Rule 12(b)(1), a court should use *Twombly–Iqbal*'s 'plausibility'

requirement, which is the same standard used to evaluate facial challenges to claims

under Rule 12(b)(6). *Silha*, 807 F.3d at 173.

## CLASS ACTION FAIRNESS ACT

Chervon removed this case from the Twentieth Judicial Circuit in St. Clair County, Illinois, pursuant to the Class Action Fairness Act ("CAFA"). (Doc. 1). Under CAFA, federal courts have jurisdiction to hear a class action if the proposed class has more than 100 members, at least one class member is diverse from at least one defendant ("minimal diversity"), and the amount in controversy exceeds $5 million, exclusive of interest and costs. *Sudholt v. Country Mut. Ins. Co.*, 83 F.4th 621, 625 (7th Cir. 2023) (citing 28 U.S.C. § 1332(d)(2), (d)(5)(B)).

Here, Desparrois is a citizen of Illinois, Chervon is a citizen of Illinois, and Lowe's is a citizen of North Carolina. Thus, minimal diversity exists between the parties. Desparrois also alleges that the number of potential class members is 63,000, which is the number of Products affected by the recall. Finally, Desparrois claims the amount in controversy exceeds $5,000,000, exclusive of interest and costs. Thus, the Court is satisfied that it has jurisdiction over this action.

## DISCUSSION

### I.    Article III Standing

Defendants first argue that the case should be dismissed for lack of standing because Desparrois did not plead any injury-in-fact and because the recall negated any justiciable case or controversy.

Article III of the Constitution limits federal courts to resolving "Cases" and "Controversies," which is understood as restricting the courts to their "constitutionally

limited role of adjudicating actual and concrete disputes" in a form that is appropriate for judicial decision and the resolution of which will "have direct consequences on the parties involved." *Nabozny v. Optio Sols. LLC*, 84 F.4th 731, 733-34 (7th Cir. 2023) (quoting *Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013)).

"An essential component of the case-or-controversy limitation is the requirement that a plaintiff have standing to sue—that is, a 'personal stake' in the outcome of the suit sufficient to engage the jurisdiction of the federal court." *Id.* To demonstrate that personal stake, "plaintiffs must be able to sufficiently answer the question: 'What's it to you?'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quoting Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 SUFFOLK U. L. REV. 881, 882 (1983)). Without Article III standing, federal courts have no authority to resolve a case for want of subject matter jurisdiction. *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.,* 935 F.3d 573, 581 (7th Cir. 2019); *see also Spokeo, Inc. v. Robins,* 578 U.S. 330 (2016).

To establish standing, a plaintiff must show "(1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1244 (7th Cir. 2021) (quoting *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 540 (2020)).

A "concrete" injury is one that is real, not abstract, and a "particularized" injury is one that affects the plaintiff personally. *Crabtree v. Experian Info. Sols., Inc.*, 948 F.3d 872, 877 (7th Cir. 2020) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). An injury must be actual or imminent, not conjectural or hypothetical. *Id.* "Without 'an injury that

Page 6 of 21

the defendant caused and the court can remedy, there is no case or controversy' under Article III." *Nabozny*, 84 F.4th at 734 (quoting *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019)). As the Supreme Court has put it, "[n]o concrete harm, no standing." *TransUnion LLC*, 594 U.S. at 417.

"Economic harm can be a concrete injury sufficient to confer standing" including when, "as a result of a deceptive act or an unfair practice, a plaintiff is deprived of the benefit of his bargain." *In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, 97 F.4th 525, 529 (7th Cir. 2024) (cleaned up and citations omitted).

Desparrois bears the burden of demonstrating standing for each of his claims and requests for relief. *Id.* at 2207-08 ("[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages).").

A. *Injury-in-Fact*

Defendants first argue that the case should be dismissed for lack of standing because Desparrois suffered no injury-in-fact and because the recall negated any justiciable case or controversy. Defendants assert that Desparrois's only allegation of harm and basis for recovery is economic loss due to the Products' *potential* to overheat, thereby posing fire and burn hazards.[1] Defendants argue that this case is analogous to *In re Recalled Abbott Infant Formula Products Liability Litigation*, 97 F.4th 525, 532 (7th Cir. 2024), in which the Seventh Circuit Court of Appeals held that a plaintiff seeking

---

[1] Defendants also point out that although Desparrois alleges that he suffered minor injuries to his hand and destruction of the Product, none of his claims are based on his own personal injuries. (Doc. 21 at ¶ 12).

economic damages based on a risk-of-harm theory lacks standing when the "alleged injury is hypothetical or conjectural."

In response, Desparrois argues that the Amended Complaint sufficiently alleges that he suffered a concrete and particularized injury-in-fact. Desparrois notes that he alleged physical injuries in the form of burns to his hand and economic harm because he was deprived of the benefit of the bargain. And, he argues, under *In re Aqua Dots Products Liability Litigation*, 654 F.3d 748 (7th Cir. 2011), a financial injury is sufficient to establish standing.

To begin, as noted by Defendants, Desparrois's assertion that he was physically harmed is irrelevant, as he does not seek relief on behalf of himself or the class for the alleged minor injury to his hand. Instead, Desparrois's claims revolve around the lost benefit of the bargain from purchasing a product he would not have purchased or paid substantially less for had he known of the risk of overheating and fire.

In *Aqua Dots*, a toy manufacturer substituted a nontoxic adhesive with an adhesive, that, if ingested, could cause nausea, dizziness, drowsiness, agitation, depressed breathing, amnesia, unconsciousness, and death. *Id.* at 749-50. The toys— small, brightly colored beads that resembled candy—were swallowed by some children who then became sick. *Id.* at 750. A recall notice instructed consumers to exchange the Aqua Dots products for non-defective replacement kits or a comparably priced toy. *Id.* The company also provided refunds when requested. *Id.* The plaintiffs who filed the lawsuit were purchasers of Aqua Dots whose children were not harmed and who did not ask for a refund. *Id.* Instead, they challenged the adequacy of the recall program, asking

for a full refund plus punitive damages. *Id.* The defendant challenged the plaintiffs'
standing to sue given that none of the plaintiffs or their children were harmed by the
product. *Id.* The Seventh Circuit held that the lack of physical injury did not mean the
plaintiffs were uninjured. *Id.* "The plaintiffs' loss is financial: they paid more for the toys
than they would have, had they known of the risks the beads posed to children.
A financial injury creates standing." *Id.*

The case relied on by Defendants, *In re Recalled Abbott Infant Formula*, similarly
recognized that "[e]conomic harm can be a concrete injury sufficient to confer standing,"
including when, "as a result of a deceptive act or an unfair practice, a plaintiff is deprived
of the benefit of his bargain." *In re Recalled Abbott Infant Formula*, 97 F.4th at 529. In that
case, powdered infant formula produced by Abbott Laboratories at a specific plant in
Sturgis, Michigan, was found to contain harmful bacteria. *Id.* at 528. The Food and Drug
Administration did not mandate a recall, but Abbott announced a voluntary recall of
certain products manufactured at that specific plant and offered a full refund to
consumers who possessed that formula. *Id.* Various lawsuits were consolidated for
pretrial proceedings, including a category of plaintiffs who did not claim personal
injuries but rather purely economic losses due to Abbott's conduct. *Id.* The plaintiffs
asserted that there was a "risk" that the products were contaminated; therefore, plaintiffs
did not get the safe infant formula that they bargained for. *Id.*

The Seventh Circuit described the plaintiffs' alleged injury as a "past potential risk
of harm resulting in economic losses" that was "hypothetical or conjectural." *Id.* at 529.
The court explained that the plaintiffs did not allege the specific product they bought was

contaminated or that the contamination was so widespread as to plausibly affect the product they purchased, and the *potential* risk of contamination was not enough to confer standing. *Id.* at 530. The court distinguished *Aqua Dots* because, in that case, it was undisputed that every Aqua Dots unit was defective, and "a universal defect inherent in a product—such as a design defect or a fundamental flaw—renders each product valueless to each plaintiff." *Id.* at 529-30. With Abbott's infant formula, however, there was "only a potential risk of harm or defect, not a universal defect, and no way to tell how widespread the defect was . . . ." *Id.*

In their reply, Defendants argue that Desparrois's sole theory of recovery is that he would not have purchased or paid the same amount for batteries "that pose a *substantial risk* of overheating and causing a fire," and that, under *In re Recalled Abbott Infant Formula*, a *potential* risk of harm does not constitute an injury-in-fact. In so arguing, Defendants confound the Seventh Circuit's holdings in the two cases. In *Aqua Beads*, all products were defective and therefore valueless to each plaintiff. In *In re Recalled Abbott Infant Formula*, the plaintiffs did not allege that every product was contaminated with harmful bacteria, nor did they allege that the products *they purchased* were contaminated. As the district court stated in *In re Recalled Abbott Infant Formula*, if the plaintiffs' were found to have standing, "then any purchaser of a good that functioned precisely as expected without any risk of future harm could bring suit if they later discovered undisclosed information, even if it only affected others." *In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, No. 22 C 4148, 2023 WL 3587295, at *4 (N.D. Ill. May 22, 2023*), aff'd*, 97 F.4th 525 (7th Cir. 2024).

Contrary to Defendants' arguments, this case is more like *Aqua Dots* than *In re Recalled Abbott Infant Formula*. Desparrois alleges that all 63,000 SKIL 40V 5.0Ah Lithium-Ion Batteries were defective. (Doc. 21 at ¶ 82). Even if a specific battery had not *yet* overheated and melted, the defect and the risk of future harm still existed in each Product, which Desparrois and the class members could not have known at the time of purchase. Thus, Desparrois has plausibly alleged that he suffered a financial injury when he purchased a Product that he would not have purchased, or paid substantially less for, had he known of the defect. This financial injury is sufficient to establish standing.

Defendants also argue that, unlike the plaintiffs in *Aqua Dots*, Desparrois has not sufficiently pleaded that the recall program is inadequate. The Court disagrees. Desparrois has alleged that the recall program requires consumers to store and handle the defective Products, pack them up, and mail them to Chervon. If the consumer chooses a refund, the compensation does not cover any damage to property or injuries to persons. If the consumer chooses to receive a replacement battery, there is no guarantee that the replacement is different or any safer than the recalled product. And, for consumers who no longer possess the battery because it malfunctioned and they disposed of it sometime in the five years before the recall was initiated, there is no remedy whatsoever. Defendants' reliance on non-binding case law from the Tenth Circuit does not change the outcome. Desparrois sufficiently alleged an injury-in-fact.

B. *Mootness and Ripeness*

Defendants next argue that the case should be dismissed for lack of standing under the doctrines of prudential mootness and ripeness.

With regard to mootness, Defendants cite out-of-circuit, district court cases to argue that a defendant's offer of a full refund moots the plaintiff's claims. In other words, a plaintiff cannot demonstrate injury simply by refusing to seek the refund offered by the defendant. These cases are both non-binding and unpersuasive, as they involve cases where the refund or reimbursement offered fully compensated the plaintiff. *See, e.g.*, *In re McNeil Consumer Health Care*, 877 F.Supp.2d 254, 273 (E.D. Pa. July 13, 2012) (recognizing that "the mere existence of a refund offer is not sufficient to defeat standing" unless the plaintiff fails to allege the refund offer was insufficient); *Tosh-Surryhne v. Abbott Lab'ys Inc.*, No. CIV S-10-2603 KJM, 2011 WL 4500880, at *5 (E.D. Cal. Sept. 27, 2011) ("The court finds that defendant has made a full offer of restitution to plaintiff . . . "). Here, Desparrois has alleged that the remedy offered by Chervon is inadequate because it does not fully compensate for additional losses caused by the Products' defect.

The only in-circuit case cited by Defendants is *Strama v. Toyota Motor Sales, U.S.A., Inc.*, No. 15 C 9927, 2016 WL 561936 (N.D. Ill. Feb. 12, 2016). There, Toyota implemented a program that provided for repair services and reimbursement of costs to customers whose vehicle had an oil consumption defect. *Id.* at *2. The plaintiffs, who had not taken advantage of the repair and reimbursement program, brought claims under the ICFA and for breach of the duty of good faith and fair dealing. *Id.* at *1. The plaintiffs speculated that the program would not reimburse all of their past and future costs and that the parts would not be available, causing inconvenience and a delay of months, if not years. *Id.* at *2. The court held that the plaintiffs' claims were "the type of hypothetical and speculative concerns that are not ripe for adjudication in a court of law." *Id.* While the

court did note that the plaintiffs chose to ignore the relief offered by Toyota and instead initiate litigation, it did so in the context of distinguishing a case that discussed mootness. *Id.* at *3. The court ultimately found it did not have jurisdiction because the claims in *Strama* were not ripe. *Id.*

Unlike the claims in *Strama*, the claims made by Desparrois are not speculative. He has alleged that Chervon offers no compensation for damage to property or persons, for the required storage of the Products, for consumers' time spent packing up the dangerous Products, or for consumers who no longer possess the Product due to its malfunction.[2] Thus, the Court finds that the claims present actual, concrete conflicts that are ripe for resolution through this litigation.

    C.  *Injunctive Relief*

Finally, Defendants contend that Desparrois lacks standing to seek injunctive relief. The Court agrees that Desparrois has not pleaded a likelihood of future injury sufficient to establishing standing for a claim of injunctive relief. The Amended Complaint contains only boilerplate language regarding injunctive relief, and Desparrois did not respond to this argument in his brief. Accordingly, the Court dismisses the request for injunctive relief.

## II.    Failure to State a Claim

Defendants next argue that the Amended Complaint is so vague and conclusory

---

[2] In their reply brief, Defendants claim Desparrois has not "plead [sic] any facts showing that buyers whose batteries have been destroyed cannot obtain the recall remedy." However, Defendants' own exhibits to their Motion to Dismiss include "Recall FAQs," which states that consumers who have proof of purchase "but no longer have a recalled unit . . . are not eligible for a recall remedy." (Doc. 24-3).

that it fails to state any legal claim under Illinois law.[3]

A. *Notice Requirement*

Defendants assert that Desparrois's breach of express and implied warranty claims must be dismissed because Desparrois did not put Defendants on fair notice of his claims. Illinois has adopted the Uniform Commercial Code ("UCC"), Section 2 of which applies "to transactions in goods." *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 301 (7th Cir. 2018) (citing 810 ILCS 5/2-102). Section 2–607 of the UCC mandates that a "buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 589 (7th Cir. 1996). "In general, buyers . . . must directly notify the seller of the troublesome nature of the transaction or be barred from recovering for a breach of warranty." *Id.* Two exceptions are recognized under Illinois law: "when (1) the seller has actual knowledge of the defect of the particular product; or (2) the seller is deemed to have been reasonably notified by the filing of the buyer's complaint alleging breach of UCC warranty." *Id.* (internal citation omitted).

Desparrois relies on the first exception, arguing that Defendants were aware of an actual defect with this particular product, considering Chervon received 100 reports of thermal incidents involving the batteries. Illinois law is clear, however, that general knowledge of problems with a product line is not enough to satisfy the notice

---

[3] Defendants claim that the Amended Complaint is so vague that it does not even allege which state's law is at issue. When considering a motion to dismiss before a putative class has been certified, "the Court looks only to the named Plaintiff's individual claims and circumstances." *Giasson v. MRA - Mgmt. Ass'n, Inc.*, 777 F. Supp. 3d 913, 921 (E.D. Wis. 2025). Because Desparrois is an Illinois citizen, the Court applies Illinois law.

requirement. *Id.* at 590 ("the notice requirement of section 2–607 is satisfied only where the manufacturer is somehow apprised of the trouble with the particular product purchased by a particular buyer"). The *Connick* court explained that the seller must "be notified that *this particular transaction* is troublesome and must be watched." *Id.* Thus, the notice required is "not of the facts, which the seller presumably knows quite as well as, if not better than, the buyer, but of [the] *buyer's claim*" that those facts constitute a breach. *Id.*; *see also Cerretti v. Whole Foods Mkt. Grp., Inc.*, No. 21 CV 5516, 2022 WL 1062793, at *5 (N.D. Ill. Apr. 8, 2022) ("This exception to the notice requirement centers on manufacturer knowledge of a plaintiff's *claim*, rather than the facts of the alleged breach."). "The reason for this distinction is that where the breach has not resulted in personal injury, the UCC indicates a preference that the breach be cured without a lawsuit." *Id.* at 590-91. The fact that a recall was issued also does not help Desparrois, as "[a] federally mandated recall notice does not fulfill the UCC's notice requirement." *Perona v. Volkswagen of Am., Inc.*, 684 N.E.2d 859, 863 (Ill. App. Ct. 1997).

Desparrois does not argue that the second exception to the notice requirement applies to his case, and for good reason. Only a consumer plaintiff who suffers a personal injury may satisfy the section 2–607 notice requirement by filing a complaint stating a breach of warranty action against the seller. *Connick*, 675 N.E.2d at 590. Although Desparrois alleges that he suffered a minor hand injury, he has not brought any claims specific to that injury and instead seeks to represent a class of plaintiffs who were deprived of the benefit of the bargain in purchasing the Products. *See Wienhoff v. Conagra Brands, Inc.*, 626 F. Supp. 3d 1015, 1027 (S.D. Ill. 2022) (finding that plaintiff claiming only

economic loss and not personal injury did not satisfy notice requirement); *Jensen v. Bayer AG*, 862 N.E.2d 1091, 1099-1100 (Ill. App. Ct. 2007) (dismissing breach of implied warranty of merchantability claim, on privity grounds, when plaintiff suffered alleged personal injury but was suing only for economic loss). Thus, the second exception is inapplicable here.

Because Desparrois did not notify Defendants of any issues with the specific Product he purchased prior to filing suit, his express and implied breach of warranty claims in Counts II, III, and IV are dismissed.

B. *Breach of Express Warranty*

Even if Desparrois had provided Defendants with notice under the UCC, his claim for breach of express warranty would still fail.

"Stating a claim for breach of express warranty in Illinois requires a plaintiff to allege that the seller: (1) made an affirmation of fact or promise; (2) relating to the goods; (3) which was part of the basis for the bargain; and (4) guaranteed that the goods would conform to the affirmation or promise." *Bayer HealthCare LLC v. Aeropres Corp.*, 767 F. Supp. 3d 810, 817–18 (N.D. Ill. 2025). The plaintiff also must be in privity of contract with the defendant. *Id.* However, "express warranty claims are permitted to bypass the privity requirement if a manufacturer 'expressly warranted its goods to the ultimate consumers and this was the basis for the bargain and relied upon by plaintiffs.'" *Bakopoulos v. Mars Petcare US, Inc.*, 592 F. Supp. 3d 759, 765 (N.D. Ill. 2022) (quoting *Rosenstern v. Allergan, Inc.*, 987 F.Supp.2d 795, 805 (N.D. Ill. 2013)). "Generally, plaintiffs must state the terms of the warranty [alleged to be breached] or attach it to the complaint." *Id.* (citation omitted).

Defendants argue Desparrois's claim for breach of express warranty must be dismissed because, among other things, he did not state the terms of the express warranty or attach the warranty to the complaint. The Court agrees. Desparrois alleges generally that Defendants' labeling, marketing, advertising, and packaging made promises and affirmations of fact constituting an express warranty that the Products were safe for their intended use and that the Products did not conform to Defendants' affirmations and promises regarding safety. (Doc. 21 at ¶¶ 53-57). However, Desparrois has not pointed to any specific statement made by Defendants that makes a promise regarding safety. Thus, he has not plausibly alleged the existence of an express warranty that was breached.

Accepting all well-pleaded facts and drawing all reasonable inferences in his favor, the Court finds that Desparrois has failed to state a claim for breach of express warranty.

C. *ICFA*

Defendants next argue that Desparrois has failed to state a claim under the ICFA. The ICFA aims to shield consumers against unfair or deceptive acts or practices, including but not limited to the use of deception, fraud, false pretense, false promise, misrepresentation, or concealment, or the omission of any material fact. 815 ILCS § 505/2. To state a claim under the ICFA, a plaintiff must allege facts showing: "(1) that the defendant engaged in a deceptive or unfair practice; (2) with the intent that the plaintiff (or others) rely on the deception; (3) that the act occurred in the course of trade or commerce; and (4) that the deception caused actual damages." *Kahn v. Walmart Inc.*, 107 F.4th 585, 598 (7th Cir. 2024).

"[A] practice is deceptive if it creates a likelihood of deception or has the capacity to deceive." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019). Courts apply a "reasonable consumer" standard when evaluating whether a statement is deceptive or has the likelihood to deceive, which factors in the totality of the information available to the consumer at the point of deception. *Kahn*, 107 F.4th at 598. Under this standard, a plaintiff must show that "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 474–75 (7th Cir. 2020).

"If the claim rests on allegations of deceptive conduct, then [Federal Rule of Civil Procedure] 9(b) applies and the plaintiff must plead with particularity the circumstances constituting fraud." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019). That is, the plaintiff must identify the "who, what, when, where, and how" of the alleged fraud. *Id.* "[I]n a case involving multiple defendants . . . the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994) (citation omitted).

Defendants contend that Desparrois has not identified a single false or misleading statement, representation, promise, or warranty given by Defendants and on which he relied. Nor has Desparrois pleaded the "who, what, when, where, and how" of the alleged deceptive act. Instead, he has made vague, generic references to unspecified advertisements, which is insufficient to state a claim for deception under the ICFA.

The Court agrees that Desparrois has failed to meet the Rule 9(b) standard for alleging a deceptive act. The Amended Complaint claims that Defendants falsely

marketed the batteries as "safe," but it does not provide any examples of the false statements Defendants allegedly made. There are no allegations as to what the Products' labeling, marketing, advertising, and packaging actually said, which Defendant made the false statements, when[4] or where the statements were made, or how the statements were communicated to Desparrois. This lack of specificity dooms Desparrois's IFCA claim. *See Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) (fraud pleading requires plaintiff to identify the "person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff."); *Angelilli v. Activision Blizzard, Inc.*, 781 F. Supp. 3d 691, 705 (N.D. Ill. 2025) ("At the very least, Rule 9(b) requires Plaintiffs' complaints of fraud to allege the specific misstatements made by Roblox Corp., when those statements were made, and to which of the two Plaintiffs."); *Kampmann v. Procter & Gamble Co.*, 699 F. Supp. 3d 678, 692 (C.D. Ill. 2023) ("It is clear that to defeat a motion to dismiss, the Plaintiff must clearly identify a communication which contained a misrepresentation or material omission. Plaintiff has not done so and has failed to plead a cognizable ICFA claim.").

Because Desparrois has not alleged his ICFA deception claim with the specificity required by Rule 9(b), it is dismissed.

D. *Unjust Enrichment*

Finally, the Court addresses Desparrois's unjust enrichment claim in Count I.

---

[4] Desparrois argues that he provided the timeframe, but he points only to his general allegation that the Products were sold from October 2019 through December 2024. Simply providing the five-year timeframe in which the Products were sold is insufficient to state a claim for fraud under Rule 9(b).

Desparrois claims that he and the class members paid money to Defendants to purchase the dangerous Products and that Defendants accepted and retained these benefits. (Doc. 21 at ¶¶ 45-46). But, because the Products were dangerous and did not comport with Defendants' warranties, representations, advertising, and labeling regarding safety, it would be unjust and inequitable for Defendant to retain those benefits. (*Id.* at ¶¶ 47-49).

Under Illinois law, "[u]njust enrichment is not a separate cause of action that, standing alone, will justify an action for recovery." *Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920, 928 (Ill. App. Ct. 2009); *see also Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 648 (7th Cir. 2019). "Rather, it is a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress, or undue influence, and may be redressed by a cause of action based upon that improper conduct." *Id.* (quoting *Alliance Acceptance Co. v. Yale Insurance Agency*, 648 N.E.2d 971, 977 (Ill. App. Ct. 1995)).

Here, Desparrois's request for relief based on unjust enrichment is "tied to the fate" of his claims for breach of express and implied warranties and the ICFA. *See Benson*, 944 F.3d at 648. Because those claims have been dismissed for failure to state a claim, Desparrois's unjust enrichment claim must also be dismissed.

## CONCLUSION

For these reasons, the Motion to Dismiss Plaintiff's Amended Complaint Under Rules 12(b)(1) and 12(b)(6) filed by Defendants Chervon North America, Inc., and Lowe's Home Centers, LLC, is **GRANTED.** Although Plaintiff Anthony Desparrois has Article

III standing to bring his claims in this Court, he has failed to state a claim under Rule 12(b)(6). Accordingly, the Amended Complaint (Doc. 21) is **DISMISSED without prejudice**.

Plaintiff is **GRANTED** leave to further amend his complaint, to the extent he is able to state a claim, on or before **March 25, 2026**.

**IT IS SO ORDERED.**

DATED:   February 25, 2026

**NANCY J. ROSENSTENGEL**
**United States District Judge**